UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:17-CR-30053-RAL |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL |
| AMIN RICKER, | |
| Defendant. | |

Amin Ricker (Ricker) was indicted on two counts of aggravated sexual abuse of a child, one count of travel with intent to engage in illicit sexual conduct, and one count each of transportation, distribution, receipt, and possession of child pornography. Doc. 36. Ricker pleaded not guilty and his case was tried to a jury between March 17 and March 22, 2019. The jury returned a verdict finding Ricker guilty on all seven counts. Doc. 204.

Ricker, after the jury verdict, filed a renewed motion for judgment of acquittal or in the alternative for a new trial. Doc. 209. For the reasons explained in this Opinion and Order, those motions are denied.

I.  **Summary of Facts**

Ricker's activity resulting in his indictment in this case first came to the attention of South Dakota law enforcement in February of 2017. On February 10, 2017, the South Dakota Internet Crimes Against Children Task Force received a "cyber tip" from the National Center for Missing and Exploited Children, triggered by inappropriate Instagram chats occurring between cheer_dad17 and nataliejewell40. The Instagram chat suggested that nataliejewell40 was a

1

thirteen-year-old girl and that cheer_dad17 was an adult male who had sent a photograph of his penis and child pornography images of a prepubescent female presumably within the care and household of cheer_dad17. Tr. Ex. 9. Local law enforcement was given the IP address for cheer_dad17, and with the assistance of the internet provider identified the residence from which cheer_dad17 was accessing the internet as the home of Carol Peterson (Peterson) on Sully Avenue within Pierre, South Dakota. Tr. Ex. 8. Local law enforcement obtained a search warrant on February 13, 2017, and executed it in the early afternoon of February 14, 2017. Ricker, then 30 years old, was renting a bedroom from Peterson and was at the home when officers executed the search warrant. Ricker agreed to speak with Detective Sergeant Dusty Pelle (Detective Pelle). Ricker acknowledged that he was the holder of the Instagram account cheer_dad17, that he had been engaged in the communication with nataliejewell40, and that child pornography might be found on his electronic devices. Ricker denied hurting any child. Ricker later voluntarily stopped speaking with Detective Pelle. Tr. Ex. 11.

Peterson, a grandmother who had worked for the State of South Dakota for forty years, had simply rented a room to Ricker within her home and was unaware of Ricker sending child pornography and lewd photographs by Instagram chat. Ricker once had shown her a photograph of his girlfriend, saying the girlfriend was nineteen, but Peterson had questioned that the girl appeared much younger and told Ricker of the need to date someone at least eighteen years of age. Ricker at one point had told Peterson that he had two children who lived in Texas with his sister; in fact, Ricker has no children. Otherwise, Peterson found Ricker to be responsible and self-sufficient and had no idea what Ricker was up to while using the internet within her home.

Based on the search warrant, law enforcement seized from Ricker's person a Samsung Galaxy S7 and seized from Ricker's bedroom a white iPad, a pink Paris bag containing three more

2

cell phones and seven flash drives, a Dell all-in-one PC, a Toshiba laptop computer, a Justice bag containing girls clothing, a Samsung Galaxy S4, an Acer laptop computer, a bag of girls panties, a Paris notebook containing a series of passwords and usernames, and a zip-lock bag of receipts and two girls' bracelets. Tr. Ex. 10.

As it turns out, three of the devices were related to a prior state court child pornography case involving Ricker. The content on those three devices—a Toshiba laptop computer, Samsung SGHT99 Galaxy 3 cell phone, and ZTE Tracfone—formed the basis of the Beadle County criminal case styled <u>State of South Dakota vs. Amin Ricker</u>, CR 14-425. Tr. Ex. C. Circumstances of that case were introduced, without objection, both because Ricker as part of his defense contended that the child pornography found in his possession came from those devices involved in the Beadle county case which state authorities returned to him, and because Rule 414 of the Federal Rules of Evidence made the circumstances of that case admissible due to the close proximity of time and nature of his relationship with prepubescent female S.J. in Beadle County. <u>See</u> Fed. R. Evid. 414. This Court gave limiting instructions regarding the proper use of the information regarding the Beadle County criminal case, including Final Instruction No. 27 as follows:

> This Court has received into evidence certain exhibits and testimony concerning the defendant's Beadle County criminal case. The defendant having been charged in Beadle County with similar crimes is not evidence that he committed any of the offenses alleged in the superseding indictment. Testimony concerning defendant's alleged actions toward S.J., if you believe the testimony, may be considered by you in deciding whether the defendant is guilty or not guilty of any crime charged in the superseding indictment.
>
> The defendant is not on trial for any conduct in Beadle County, and you should be mindful of the date ranges alleged in the superseding indictment in this case when deciding if the defendant is guilty or not guilty of any of the crimes charged. Defendant is not alleged in this case to be guilty of possession of child pornography simply because his electronic devices were returned to him by Beadle County authorities without being purged of content. Defendant is only guilty of possession of child pornography if he knowingly acquired additional images of child pornography after the return of his electronic devices by Beadle County

3

>authorities or possessed child pornography during the time frame alleged through other devices not returned to the defendant by Beadle County authorities.

Doc. 203 at 28.

In short, the Beadle County case stemmed from Ricker's behavior in Huron, South Dakota, where he had been working for a railroad as a conductor. Ricker had developed an intense interest in 2013 and 2014 in eleven-year-old female S.J. S.J.'s mother allowed Ricker to hang out with her and her three children, and Ricker had given S.J.'s mother money for groceries. Ricker had asked the mother for alone time with S.J., but the mother refused. Around the time of S.J.'s twelfth birthday, the mother became aware of three love letters and one poem that Ricker (whose date of birth is in November of 1986 and was approximately sixteen years older than S.J.) had written and given to S.J. Tr. Ex. 246. S.J.'s mother took the letters to the Huron Police Department (Huron Police) and a detective then interviewed S.J. S.J. testified at trial, consistent with what she had told police, that Ricker would kiss her on the lips, give her hugs, and touch her in places like the side of her breasts. Ricker would tell her that he loved her and write letters to her. Ricker also had asked her to spend time alone and to go out of town with him, and had exchanged text messages of an inappropriate nature with her. Tr. Ex. 245, 246. S.J.'s older brother testified that Ricker had shown him naked photographs of thirteen-year-old girls and S.J.'s brother, a juvenile at the time, had told Ricker to delete those images or he would get in trouble.

The Huron Police through a search warrant obtained two phones and the laptop computer from Ricker and conducted a forensic review of them. The Huron Police found forty images of child pornography on the Toshiba laptop, forty-one images of child pornography on the Samsung Galaxy 3 phone, and fifty-one images of child pornography on the ZTE Tracfone. Some of the same images of child pornography were on each of the devices. Both the Samsung Galaxy 3 and the ZTE Tracfone contain many images of S.J., including some images that focused on her clothed

4

genital areas; none of those images of S.J. were of her naked or otherwise child pornography. Ricker worked out a plea agreement in Beadle County where he pleaded guilty on March 16, 2015, to possession or distribution of child pornography, and the other count of sexual contact with a child under sixteen was dismissed. Tr. Ex. 14, A, B. Ricker received a suspended imposition of sentence on May 26, 2015. Astonishingly, on July 7, 2015, based on a motion from the then Beadle County deputy state's attorney and an order from a state court judge, Beadle County authorities returned to Ricker the three electronic devices not purged of the child pornography. Tr. Ex. C. Thus, part of Ricker's defense in this case was that child pornography images in his possession were from a prior case for which he was not facing federal charges.

On account of the return of electronic devices to Ricker by the Beadle County authorities after his conviction there, no forensic examination was done in this case on the three devices returned. The forensic examination done on the remaining iPad, cell phones, laptop, and flash drives, however, revealed an incredible trove of child erotica[1] and child pornography far exceeding anything involved in the Beadle County case. Indeed, on the devices not involved in the Beadle County case, Ricker had 30,000 image files of child erotica and child pornography and over 100 video files of child erotica and child pornography. The forensic computer expert testified to what was contained on each device separately. The Apple iPad contained images related to the cyber tip from the Instagram chats and depicted pornographic images of two seven-year-old girls, S.M. and J.M., whose images Ricker as cheer_dad17 uploaded onto Instagram from the Apple iPad. Tr. Ex. 9, 19–21. There are a number of other images and searches on the Apple iPad associated with

---

[1] The witness testifying to the forensic evaluation defined child erotica as images depicting children in revealing clothing, posing in a sexual manner, or focusing on their clothed genitalia, as opposed to child pornography which involves child nudity or minors engaged in sexual acts. The count of the images excluded "age difficult" images where the person depicted may or may not be under age 18.

S.M. and J.M., as well as other child pornographic images. Tr. Ex. 9, 19–24. The search history of the Apple iPad had a number of searches associated with child pornography and child erotica. Tr. Ex. 26, 29. There were also searches related to S.M. and J.M. and Bogota, Texas, a community in which S.M. and J.M. had lived. Tr. Ex. 30.

Ricker's Samsung Galaxy S7 had pornographic image files, instant message conversations on Kik Messenger, and pornographic images of a prepubescent female nude from the chest down on Kik Messenger. Tr. Ex. 31, 32, 38, 40–51. Ricker had been using a screen name kyliema2005, and an identity as "Lainie Marie" on Kik Messenger by using his cell phone. In January and February of 2017, Ricker using the identity of Lainie Marie had been chatting with 7Dante69 on Kik Messenger, including sending 7Dante69 links to a Dropbox account containing child pornography. Tr. Ex. 46. Dante had returned messages with links to a Russian website with child pornography. Tr. Ex. 46, 48. The Samsung phone also revealed that Ricker had a Dropbox account using the email kyliemarie84@yahoo.com and had upgraded to Dropbox Pro on February 2, 2017. Tr. Ex. 50, 51. Ricker had filled the Dropbox account with child pornography and child erotica to the point where he needed to expand the storage of the account. Tr. Ex. 60–66.

The forensic examiner accessed the Dropbox account, which contained some of the same material as on Ricker's cell phone and iPad, as well as abundant child erotica and child pornography. Tr. Ex. 60–66. One Dropbox folder Ricker had entitled "For Dante," which had been deleted the night of February 9, 2017. A memory card from Ricker's cell phone had images of Ricker with girls underwear on his head and other images. Tr. Ex. 54–59.

Ricker's Samsung Galaxy S5 contained multiple images of S.M. and J.M. Tr. Ex. 68–72. While some of the images were not pornographic, others were pornographic images and videos of the seven-year-old girls. Tr. Ex. 69, 70, 72. A PNY memory card installed in the Samsung Galaxy

S5 contained further child pornography and child erotica. Tr. Ex. 75–80. An older Samsung flip phone from which only incoming messages could be retrieved contained messages from cousins of S.M. and J.M., as well as other images of bare breasts and bare vaginas. Tr. Ex. 81, 84–92.

Ricker's ultimate library of child pornography was a 64-gigabyte thumb drive that had subfiles including "homemade" within which were files associated with S.M. and J.M. and "Texas twins." Tr. Ex. 97–154. Within those files, and consistent with information on one of the cell phones, there were images and videos of child pornography of S.M. and J.M. originated on January 7, 8, and 9, 2015 (of J.M. Tr. Ex. 99–101, of S.M. Tr. Ex. 114, 117, 118) and originated on March 13, 14, and 15, 2015 (of J.M. Tr. Ex. 102–05, 107, 110, of S.M. Tr. Ex. 120–22, 124, 127). Ricker had taken pornographic and non-pornographic photographs and videos of S.M. and J.M. on those dates, and one of the twins, apparently S.M., actually had said "Amin... stop hitting" as he sexually molested the girl. Tr. Ex. 127. Ricker also had subfiles for S.M. and J.M.'s cousins then known as N.M. (Tr. Ex. 155–61) and A.M. (Tr. Ex. 162–72). Ricker had other images of young girls that he had taken and placed in subfiles that were child erotica but not pornographic, as well as hardcore child pornography. Tr. Ex. 166–72.

South Dakota law enforcement authorities identified the subject of Ricker's homemade pornographic images and videos as S.M. and J.M., twins living in Texas who at the time of the making of the images in early 2015 were seven years of age. South Dakota law enforcement authorities came to learn that Texas authorities had started a separate investigation into Ricker based on a report of his sexually inappropriate activities towards S.M. and J.M. in Texas. S.M. and J.M., in 2015, attended Rivercrest Elementary in Bogota, Texas. A technology and mathematics teacher at Rivercrest Elementary had suspicions about Ricker's conduct towards young females and had been checking Ricker's Facebook page. That teacher saw a photograph of

7

Ricker on his Facebook account kissing one of the twins on the mouth. The teacher reported the incident to the Rivercrest Elementary school counselor, who knew the twins because they attended the counselor's weekly grief group after their father had died. The counselor learned on December 15, 2015, about the photographs being posted of the twins kissing an adult man on the lips. The counselor had seen the man two years previously when he posted inappropriate photographs with S.M. and J.M.'s older cousins. The counselor first questioned J.M. about the photograph, which caused J.M. to turn red and wring her hands. J.M. then disclosed information to the counselor that prompted the counselor to pull S.M. and the twins' older brother into her office and to notify law enforcement.

Bogota Chief of Police David Short received the report from Rivercrest Elementary and went to the school. S.M., J.M., and their brother never did go home thereafter to their mother. Police Chief Short interviewed their mother, Rhonda Mackey (Mackey). Mackey, who has told multiple stories on various occasions, initially told Chief Short that Ricker had given her $600 to allow him to sexually assault S.M. and J.M. Thereafter, Mackey denied on two or three occasions to law enforcement that she knew anything about any sexual assault of her twins. When Mackey testified at trial, she described how Ricker became acquainted with her and her family through her nieces, would visit them in Texas periodically including flying twice there and driving down on another occasion, and would bring gifts such as coloring books, shirts, an enormous teddy bear, an American Girl doll, and an iPad. Mackey said that Ricker loaned her $600 for bills and food and would sleep on the couch in the living room or, on one occasion, sleep in the bedroom. Mackey was living with another man at the time who worked long hours and had his kids with them only on the weekends. Mackey testified at trial that she walked into a bedroom and saw Ricker with his clothes off, the twins wearing just underwear, and J.M. with her hand on Ricker's penis.

Mackey described that she left the room, returned later, and saw similar activity between Ricker and S.M., left another time, and returned to see J.M.'s mouth on Ricker's penis. Mackey testified that throughout this time all had their backs to her so they did not see her looking in and that she did not know what to do so she did nothing. There was little doubt that Mackey, through telling various stories, is a less than credible witness, and she hopes to receive a probationary sentence in Texas from cooperating in the prosecution of Ricker.

S.M. and J.M. both were referred by Chief Short to a child forensic interviewer in December of 2015, at a time when they were eight years old. Neither made a disclosure of sexual abuse to the child forensic examiner.

During trial, both S.M. and J.M. testified. The twins were born in November of 2007, and have a brother who is slightly older. In January and in March of 2015, they were seven years of age. They were living in an apartment outside of Dallas, Texas, at the time. Ricker would visit periodically and brought them toys and a very large teddy bear. S.M. described that Ricker kissed her on the lips and sent J.M. and the brother on an errand to get soda from a machine. Ricker than took his clothes off, took her pajamas down and had a smile on his face. S.M. recalls that when she was in the bathroom, Ricker came up from behind her and kissed her, pulled her to him, and put his penis to her vagina. S.M. also recalled the day when she was taken into the counselor's office and that she did not see her biological mother ever again. J.M. testified that Ricker put his penis to her vagina and would do the same to her sister S.M. J.M. recalls telling the school counselor what had happened and her siblings being called down to the office. Neither J.M. or S.M. had any recollection of talking to the child forensic interviewer.

In this case, Ricker was charged with aggravated sexual abuse of a child in two counts, Count I relating to S.M. and Count II relating to J.M. The most compelling evidence that Ricker

committed an aggravated sexual abuse of S.M. and J.M. is the fact that Ricker filmed himself doing so. Ricker clearly was in Texas in January of 2015. The Government obtained American Airlines records demonstrating that Ricker flew from South Dakota to Dallas and back in January of 2015, Tr. Ex. 16, as well as Wells Fargo bank records showing his expenditures in Texas during the first visit where he filmed himself sexually assaulting the twins. Tr. Ex. 241. Video from Ricker's phone exists from his January of 2015 visit to S.M. and J.M. showing Ricker taking down the underwear of prepubescent girls, at one point spreading a prepubescent vagina with his fingers and probing around the genital area with his fingers. Tr. Ex. 99–101, 114, 117, 118. The Government obtained a search warrant to photograph Ricker's hands months before the trial and sent to a Federal Bureau of Investigation (FBI) forensic video expert the photographs and the images from the January of 2015 sexual assaults. That forensic expert testified that the left index finger pictured in the video had fifteen characteristics substantially similar to the known photograph of Ricker's left index finger. Moreover, Ricker sorted the January of 2015 videos of him probing around and into the genitals of the seven-year-old twins into files for J.M. and S.M. separately, providing compelling evidence that Ricker digitally penetrated and molested each twin in January of 2015. Tr. Ex. 99–101 (for J.M.) and 114, 117, 118 (for S.M.).

The facts are even worse for Ricker with regard to the March of 2015 aggravated sexual abuse of the twins. The Government obtained Delta Airlines records showing that Ricker flew from South Dakota to Dallas and back during the time frame of March 13 to March 15, 2015, as well as bank records showing his expenditures there. Videos found on Ricker's phone and on the 64-gigabyte thumb drive, which he sorted by the names S.M. and J.M., show Ricker pushing his erect penis against the naked vagina of each of the two seven-year-olds. Tr. Ex. 114, 117, 118 (for J.M.) and 120–22, 124, 127 (for S.M.). Photographs from that day show the shirt and pants being

worn by those children, and a portion of the shirt or a portion of the pants can be seen in the videos. In short, Ricker made a video record of himself committing aggravated sexual abuse of S.M. and of J.M.

Other evidence at trial included testimony from the cousins of S.M. and J.M. about how Ricker initially had developed a relationship with them when they were children and the impropriety of messages Ricker was sending them and photographs Ricker had on his phone about them. Sometimes he reported to have children which he did not have.

Ricker's defense during trial initially took two paths. First, Ricker contended that any child pornography he had related to the Beadle County case, which is addressed above. Ricker and his counsel also asserted that Ricker being on the autism spectrum explained his affinity toward children. Ricker had Dr. Sarah Flynn (Dr. Flynn) testify as an expert about his autism diagnosis. Dr. Flynn, a psychiatrist, had reviewed records concerning Ricker and met with Ricker. Under the Diagnostic and Statistical Manual Fifth Edition (DSM-5), Ricker is on the autism spectrum at level one, in the higher functioning realm, where he can have some difficulty communicating, can have difficulties with social interactions and maintaining friendships, and can become particularly interested in particular topics such as trains and wheels. Dr. Flynn, however, was unaware of any documentation linking autism with child pornography or pedophilia and had not done a psycho-sexual evaluation of Ricker. Evidence at trial established that Ricker had held a steady job, lived independently, and supported himself financially.

Ricker himself took the stand and denied perpetrating any sexual act on S.M. or J.M. He characterized the girls as friends and himself as interested in helping their family out financially. Ricker denied taking any naked photographs of S.M. or J.M., although he admitted that he was with them in Texas on the dates when the pornographic photographs and the videos of sexual

11

assaults were made. Ricker acknowledged taking the non-pornographic photos of S.M. and J.M. on the same dates in Texas. Ricker sought to explain that S.M., J.M., and their slightly older brother used his electronic devices when he was in Texas. Ricker acknowledged kissing little girls and loving hugs, but not kissing them in a sexual manner. Ricker acknowledged writing letters and poems to S.J., but not having any sexual relationship with her. Ricker tried to blame the abundance of pornography on his electronic devices on return of his prior media from the Beadle County case and on "Dante," the person with whom he met on Kik Messenger. Ricker testified that he had provided his user name and password to Dropbox to Dante who may then have filled up his Dropbox account with child pornography. However, the messages to Dante do not contain any such provision of a username or password, and Ricker was posing as a young girl in his Kik Messenger conversations with Dante.

On cross-examination Ricker was confronted with information from his cell phone showing a number of child erotica photographs of various young girls whom he had met through the years, including M.W. Ricker had used M.W.'s photograph as his profile for the kyliema2005 Kik Messenger account when dealing with Dante, and indeed in his Kik Messenger exchanges with Dante had assumed the identity of a young girl. Ricker's testimony could not explain how, if Dante controlled Ricker's Dropbox account, much of the same pornographic images and more were on Ricker's own 64-gigabyte thumb drive. Ricker provided no explanation of why one of the girls, apparently S.M., says "Amin" during the filming of the video of her being sexually assaulted. Tr. Ex. 127. In short, Ricker knowingly swore falsely during trial.

## II. Discussion

### A. Standard for Post-Conviction Ruling on Rule 29 Motion

Rule 29 of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). This Court denied Ricker's Rule 29 motion at the close of the Government's evidence and again denied the renewed motion at the close of all of the evidence.

Judgment of acquittal is appropriate "only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Hardin, 889 F.3d 945, 949 (8th Cir. 2018). When considering a motion for judgment of acquittal, a district court must view the evidence in the light most favorable to the government, must resolve factual conflicts in the government's favor, and must accept all reasonable inferences that support the verdict. United States v. Benton, 890 F.3d 697, 708 (8th Cir. 2018). A court on a Rule 29 motion "is not to weigh the evidence or assess the credibility of witnesses." United States v. Bredell, 884 F.2d 1081, 1082 (8th Cir. 1989) (citing Burks v. United States, 437 U.S. 1, 16 (1978)). Such credibility determinations are the province of the jury. United States. v. Stegmeier, 701 F.3d 574, 578 (8th Cir. 2012). "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." United States v. Dupont, 672 F.3d 580, 582 (8th Cir. 2012) (per curiam) (quotation omitted); see United States v. Shumaker, 866 F.3d 956, 960 (8th Cir. 2017) ("Jury verdicts are not lightly overturned . . . ." (quotation omitted)).

**B. Counts of Conviction**

    **1. Aggravated sexual abuse of a child counts.**

Counts I and II concern the aggravated sexual abuse of a child by Ricker, with Count I relating to S.M. and Count II relating to J.M. The elements of such a charge are: 1) that between

13

on or about the 1st day of November 2014, and the 31st day of March, 2015, in the District of South Dakota and elsewhere, the Defendant Amin Ricker, did cross a state line with intent to engage in a sexual act with S.M./J.M.; 2) that the Defendant knowingly engaged or attempted to engage in a sexual act with S.M./J.M.; and 3) that at the time, S.M. and J.M. were less than twelve years old. Doc. 203 at 7–8; 18 U.S.C. §§ 2241(c), 2246(2).

There is no question that between November of 2014 and March of 2015, the twins S.M. and J.M. were seven years of age. There likewise is little doubt, and in fact video proof, that Ricker engaged in a sexual act with S.M. and J.M. both in January of 2015 when he digitally penetrated and probed their vaginas and in March of 2015 where he placed his erect penis at their vaginas. There is little question that Ricker crossed a state line to do so, as he traveled from South Dakota to Texas in order to sexually molest S.M. and J.M. Part of Ricker's argument at trial was that there was no proof of his intent to engage in a sexual act when he crossed a state line, but this is belied by the fact that he had been grooming the children. See United States v. Cole, 262 F.3d 704, 709 (8th Cir. 2001) (holding that a defendant's intent may be inferred from the circumstance). Moreover, particularly with respect to the March of 2015 trip, he had already sexually assaulted them in January of 2015, traveled to Texas just for March 13–15, 2015, and was scheduled to and did plead guilty to possession or distribution of child pornography on March 16, 2015. Tr. Ex. 14. The Government put on evidence that Ricker had no reason related to his employment to be in Texas. There appears to be little, if any, reason for Ricker's March trip to Texas other than to sexually gratify himself with the seven-year-old twins and to make video images of himself doing so.

The sexual acts in January of 2015 include both the intentional touching, not through the clothing, of the genitalia of a person under the age of seven to arouse or gratify Ricker's sexual

desire, and the penetration however slight of the genital opening by hand or finger with the intent to gratify Ricker's sexual desire. The sexual acts in March of 2015 include the contact between Ricker's penis and the vulva or genital area of each twin. The evidence of Ricker's guilt on Counts I and II is overwhelming.

### 2. Travel with intent to engage in sexual conduct.

Count III charged the crime of travel with intent to engage in illicit sexual conduct. Doc. 36. The elements of that offense are: 1) that between on or about the 1st day of November 2014, and the 31st day of March 2015, in the District of South Dakota and elsewhere, the Defendant, Amin Ricker, did travel in interstate commerce, or attempted to do so; and 2) that the Defendant's purpose in traveling in interstate commerce was to engage in illicit sexual conduct with a person under twelve years of age. Doc. 203 at 10; 18 U.S.C. §§ 2423(b), (e), and (f).

The same analysis that applies to Counts I and II applies here. There was ample evidence of Ricker's intent for the trips, particularly from Ricker's trove of child pornographic images he made of S.M. and J.M. and the absence of any other legitimate explanation for his travel to stay at S.M. and J.M.'s apartment. Ricker's second trip in particular had as its motivating purpose to travel from South Dakota to Texas to engage in illicit sexual conduct with the two seven-year-old twins. Ricker not only had the intent to do so, he actually did it. See Cole, 262 F.3d at 709 (holding that a defendant having sex with the victim is a factor to consider when determining if the defendant intented to engage in criminal sexual activity when he took the victim out of the state).

### 3. Child pornography offenses.

Counts IV, V, VI, and VII charge Ricker respectively with transportation of child pornography, distribution of child pornography, receipt of child pornography, and possession of

15

child pornography. Doc. 36. This Court instructed the jury that they could not consider the material on the media return by Beadle County law enforcement after Ricker's child pornography conviction as evidence on these counts. Doc. 203 at 28. Ricker's transportation of child pornography is obvious. Ricker, in January of 2015, and again in March of 2015, filmed himself sexually assaulting S.M. and J.M. and made other images of the genitalia of S.M. and J.M. Ricker made those images and videos in Texas. Ricker traveled from Texas back to South Dakota with those images on electronic devices and sorted and categorized them on various electronic devices and media.

Ricker's distribution of child pornography is evident. Both to "Dante" through Kik Messenger and to nataliejewell40 through Instagram, Ricker distributed images of child pornography. Indeed, Ricker doing so is what caught the attention of the National Center for Missing and Exploited Children and led to the South Dakota investigation of his activity. The images were of minors engaged in sexually explicit conduct and there is no realistic question about the interstate nexus involved.

Ricker also received and possessed child pornography. There were hundreds and hundreds of images of child pornography contained on Ricker's media, separate and apart from what had been returned to him by Beadle County authorities. Ricker created a Dropbox account, filled it with images of child erotica and pornography, and bought more space on Dropbox thereafter. Ricker downloaded child pornography from various websites, including those on servers in Russia and those associated with Ukrainian child pornography sites. Ricker subscribed to a child pornography service to receive images and, consistent with how that service conceals its billing, a charge appeared on Ricker's account for that service. Tr. Ex. 194–96. Ricker created a library of

child pornography on a well-organized 64-gigabyte thumb drive. Tr. Ex. 97–172. Accordingly, this Court must deny the motion for judgment of acquittal under Rule 29.

## C. New Trial Argument

Ricker also seeks a new trial under Rule 33 of the Federal Rules of Criminal Procedure. The standard for granting a new trial is different from the standard for granting judgment of acquittal. Rule 33 allows the court to vacate any judgment and grant a new trial "if the interest of justice so require." Fed. R. Crim. P. 33(a). When evaluating a motion for a new trial on the basis of insufficient evidence, "the district court is not required to view the evidence in the light most favorable to the verdict; instead, [it] may weigh the evidence and judge witness credibility for itself." United States v. Clayton, 787 F.3d 929, 935 (8th Cir. 2015). However, a "jury's verdict must be allowed to stand unless 'the evidence weighs heavily enough against the verdict [such] that a miscarriage of justice may have occurred.'" Id. (alterations in original) (quoting United States v. Johnson, 474 F.3d 1044, 1051 (8th Cir. 2007)); see United States v. Stacks, 821 F.3d 1038, 1044 (8th Cir. 2016) ("Motions for new trials based on the weight of the evidence are generally disfavored."). The power of the court to grant a new trial should be invoked only in an exceptional case where the evidence preponderates heavily against the verdict. United States v. Starr, 533 F.3d 985, 999 (8th Cir. 2008). "As a general rule, the decision whether to grant or deny a motion for a new trial lies within the discretion of the district court." United States v. McMahan, 744 F.2d 647, 652 (8th Cir. 1984). Such authority, however, "should be exercised sparingly and with caution." United States v. Cole, 537 F.3d 923, 926 (8th Cir. 2008) (quotation omitted).

Ricker's arguments for new trial in part echo his argument for judgment of acquittal. Ricker argues that the evidence weighs heavily against the verdict, the Court erred in denying his motion for judgment of acquittal, the verdict of the jury was contrary to law, and the verdict of the jury

17

was contrary to evidence. Ricker's arguments are not well taken. There was ample evidence to support a guilty verdict on each of the counts in the superseding indictment, as explained above. Even under the Rule 33 standard where the Court may "weigh the evidence and judge witness credibility for itself," Clayton, 787 F.3d at 935, this is not the type of exceptional case where the Court should invoke its power to grant a new trial, see Starr, 533 F.3d at 999.

Ricker also asserts as grounds for a new trial that the Government disclosed discovery and expert opinions on the eve of trial, resulting in a serious miscarriage of justice. The Court addressed this issue during the pretrial conference on March 18, 2019, Doc. 197, and during the trial. The Government did disclose late that it had a comparison of the finger molesting one of the seven-year-old twins with Ricker's finger. Ricker of course knew of the video with his finger depicted in it, had made the video, and early on it was part of discovery. Ricker also knew months in advance that, by way of search warrant, his fingers had been photographed. The FBI forensic examiner who compared the finger molesting one of the twins in the video to the known photographs of Ricker's finger was disclosed late, just days before the trial. The Government did not sandbag the defense, but simply was dealing with an expert who did not do the comparison and prepare a report until close in time to trial. That is, there was no bad faith in the delayed disclosure. See United States v. Sturdivant, 513 F.3d 795, 801 (8th Cir. 2008). There likewise was no prejudice from late disclosure. See id. The defense of course could have retained its own expert to do a comparison and to testify that the fingers were not similar. Indeed, if the fingers in the video were different from Ricker's, the very able defense attorney involved in the case would have presented such testimony. The defense did not seek a delay to allow retention of any other expert. The fact that the FBI expert doing the analysis was disclosed late does not represent a

miscarriage of justice. This Court chose to restrict the FBI expert from testimony beyond the finger analysis about Ricker's phone being the device recording S.M. and J.M.'s sexual assault.

Likewise, the very brief testimony about what grooming behavior can mean by another expert does not merit a new trial or create a fundamental miscarriage of justice. The identity of that expert had been long known, and the testimony was incidental to her work. There simply was a single question asked and a relatively brief answer given. The jury could amply tell that Ricker was grooming little girls by hugging them, telling them he loved them, kissing them on the lips, buying them and their single mothers gifts, and other activities.

Ricker's final argument for a new trial is that the evidence is insufficient generally and specifically with regard to showing that Ricker acted with specific intent regarding Counts I through III, or acted "knowingly" with regard to Counts IV through VII. The evidence discussed above amply established Ricker's intent specifically to sexually assault the seven-year-old twins and that Ricker acted knowingly with regard to his transportation, distribution, receipt, and possession of child pornography. The jury's verdict must stand as no "miscarriage of justice" has occurred.

### III. Conclusion

For the reasons explained above, it is hereby

ORDERED that Defendant's Renewed Motion for Judgment of Acquittal and for New Trial, Doc. 209, is denied.

DATED this 10th day of April, 2019.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE